# NO. 15-3976

# United States Court of Appeals for the Eighth Circuit

In re: Life Time Fitness, Inc.,
Telephone Consumer Protection Act (TCPA) Litigation

Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee,

*Appellees,*

Lindsey Thut,

*Appellant,*

v.

Life Time Fitness, Inc.,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

## BRIEF OF APPELLEES PLAINTIFFS' LEAD COUNSEL AND PLAINTIFFS' EXECUTIVE COMMITTEE

Shawn J. Wanta
BAILLON THOME JOZWIAK
& WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 252-3570

J. Gordon Rudd, Jr.
ZIMMERMAN REED, PLLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 341-0400

David T. Butsch
BUTSCH ROBERTS & ASSOCIATES, LLC
231 South Bemiston, Suite 260
Clayton, MO 63105
(314) 863-5700

Katrina Carroll
LITE DePALMA GREENBERG LLC
211 West Wacker Drive
Suite 500
Chicago, IL 60606
(312) 750-1265

*Attorneys for Appellees Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee*

2016 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE (612) 339-9518 or 1-800-715-3582

## SUMMARY OF THE CASE

On December 1, 2015, the district court granted final approval of a settlement resolving class action lawsuits against Life Time Fitness, Inc. alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and consolidated in the District of Minnesota by the Judicial Panel on Multidistrict Litigation. The settlement provides members either: (1) a cash award estimated to be more than $160; or (2) a membership award with an estimated value more than $400 or a free three-month gym membership. The settlement also provides for a minimum benefit of $10 million with a maximum benefit of $15 million. This relief is exceptional, unchallenged, and not at issue in this appeal.

After fee discovery, submission of briefing and data on fees, and a hearing on the issue, the district court awarded class counsel $2,800,000 in reasonable attorney's fees and expenses. The district court overruled the objection of Objector-Appellant Lindsey Thut, which challenged the fee award. The District Court found that the award is fully in line with those granted in similar cases, which indeed it is. Unfortunately, Objector-Appellant's appeal of the order awarding attorney's fees and expenses to class counsel delays the disbursement of the settlement benefits to class members.

Objector-Appellant's appeal raises no issues meriting oral argument. Should this Court find that oral argument would be helpful in resolving the issues presented, Plaintiffs-Appellees suggest an argument time of 15 minutes per side.

Appellate Case: 15-3976    Page: 2    Date Filed: 03/23/2016 Entry ID: 4381032

# TABLE OF CONTENTS

Summary of the Case ................................................................................. i

Table of Contents ..................................................................................... ii

Table of Authorities ............................................................................... iv

Statement of the Issues ........................................................................ viii

Statement of the Case ............................................................................. 1

   I. The Parties Reached a Mediated Settlement After Engaging in Informal Discovery ................................................................................ 2

   II. The Parties Had No Agreement on Attorney's Fees and Costs. ................... 3

   III. No Class Member Objected to the Merits of the Settlement and Only One Class Member Objected to Class Counsel's Fee and Expense Request. ....... 4

   IV. Class Counsel Requested a $3 Million Award for Attorney's Fees and Expenses. ............................................................................................ 7

   V. The District Court Held a Lengthy Hearing on the Fee Motion at Which the Court Reviewed the Request Under the Lodestar and Percentage-of-the-Fund Models and Awarded Fees and Expenses as 28% of the Fund. ............ 8

Summary of the Argument ..................................................................... 10

Argument and Authorities ..................................................................... 11

   I. The District Court Did Not Abuse Its Discretion in Awarding Attorney's Fees Based Upon a Percentage of the Common Fund. ................................ 11

      A. The District Court's Decision Must Be Affirmed Unless Objector-Appellant Establishes that No Reasonable Court Could Have Reached a Similar Decision. ............................................................................ 11

      B. The District Court's Decision Followed the Majority of Courts Awarding a Percentage of a Common Fund in TCPA Settlements. .... 13

      C. The Award of Twenty-Eight Percent of the Common Fund in Attorney's Fees and Expenses is Reasonable. ................................... 14

         1. The District Court Carefully Analyzed the Attorney's Fee and Expense Request Using Detailed Time Records. ......................... 16

         2. The District Court's Decision is Based Upon Diligent Consideration of the *Johnston* Factors .......................................... 17

Appellate Case: 15-3976   Page: 3   Date Filed: 03/23/2016   Entry ID: 4381032

3. The District Court's Award Was Reasonable in Light of the Particular Facts Presented. ......................................................... 20

D. The District Court Considered but Rejected a Lodestar Cross-Check. .................................................................. 22

E. The District Court Was Within Its Discretion to Not Expressly Deduct Settlement Administration Costs from the Overall Fund Before Awarding Fees. ...................................................................23

II. The District Court Did Not Abuse Its Discretion by Allowing Class Counsel to Allocate Attorney's Fees. ...................................................... 24

A. Objector-Appellant Has Not Established that the District Court Abused Its Discretion. ...................................................... 24

B. Objector-Appellant's Theory That District Courts Must Engage in Fee Allocation Among Cooperating Co-Counsel Has No Basis in Law. ..............................................................................25

C. The District Court Did Not Have a Duty to Scrutinize the Allocation of Attorney's Fees Among Counsel. .............................. 28

D. This Issue Is Not Properly Before the Court Because Objector-Appellant Has Raised This Issue for the First Time on Appeal. ........31

Conclusion .............................................................................................32

Certificate of Compliance ....................................................................35

Certificate of Service ............................................................................36

Appellate Case: 15-3976    Page: 4    Date Filed: 03/23/2016 Entry ID: 4381032

# TABLE OF AUTHORITIES

**Cases**

*9-M Corp., v. Sprint Communications Co., L.P.*,
  No. 11-3401, 2012 WL 5495905 (D. Minn. Nov. 12, 2012) ................................26

*Allen v. J.P. Morgan Chase Bank*, *N.A.*,
  No. 1:13-cv-08285, Doc. No. 98 (N.D. Ill. Nov. 3, 2015) ............................ 14, 19

*Altier v. Worley Catastrophe Response, LLC*,
  No. Civ. A. 11-241, 2012 WL 161824 (E.D. La. Jan. 18, 2012) ..........................29

*American Art China Co. v. Firefox Printing & Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014)................................................................ 15

*Arthur v. Sallie Mae, Inc.*,
  2012 WL 4076119 (W.D. Wash. Sept. 17, 2012) .............................................. 22

*Bayat v. Bank of the West*,
  2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ................................................21

*Bellows v. NCO Fin. Sys., Inc.*,
  2009 WL 35468 (S.D. Cal. Jan. 5, 2009) ..................................................15

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ......................................................................17

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) .............................................................34

*Cash v. Wal–Mart Group Health Plan*,
  107 F.3d 637 (8th Cir. 1997) .............................................................12

*Conroy v. 3M Corporation*,
  2006 U.S. Dist. Lexis 96169 (N.D. Cal. Aug. 10, 2006)..................................... 6

*Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*,
  130 F.3d 349 (8th Cir. 1997) ............................................................ 13

*Dennings v. Clearwire Corp.*,
  Case No. c10-1859-JLR, Minute Entry at Docket Number 166,
  (W.D. Wa. Aug. 20, 2013)...................................................................5

*Denniston v. Burlington N., Inc.*,
  726 F.2d 391 (8th Cir. 1984)..............................................................36

*Evans v. TIN, Inc.*, No. Civ. A. 11-2182,
  2013 WL 4501061 (E.D. La. Aug. 21, 2013).................................................29

*Ferrari v. Teachers Ins. & Annuity Ass'n*,
  278 F.3d 801 (8th Cir. 2002)..............................................................12

Appellate Case: 15-3976    Page: 5    Date Filed: 03/23/2016 Entry ID: 4381032

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................................12

*Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601,
2015 WL 4498741 (N.D. Ill. July 23, 2015) ...................................... 20

*In re "Agent Orange" Prod. Liability Litig.*,
818 F.2d 216 (2d Cir. 1987) ....................................................... 33, 34

*In re Ampicillin Antitrust Litig.*,
81 F.R.D. 395 (D.D.C. 1978) .........................................................33

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ...................................................34

*In re Capital One*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .............................................14, 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) .....................................................5

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005)........24, 25

*In re Copley Pharm., Inc.*,
232 F.3d 900 (10th Cir. 2000)........................................................32

*In re Copley Pharm., Inc., Albuterol Products Liab. Litig.*,
50 F. Supp. 2d 1141 (D. Wyo. 1999) ............................................32, 35

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .....................................................33

*In re General Motors Corp.*,
55 F.3d 768 (3d. Cir. 1995) ...........................................................32

*In re Genetically Modified Rice Litigation*,
764 F.3d 864 (8th Cir. 2014) .........................................................33

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
No. MDL 05-1708 DWF/AJB, 2008 WL 682174 (D. Minn. Mar. 7, 2008).......33

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012).............................................26

*In re High Sulfur Gasoline Prods. Litig.*,
517 F.3d 220 (5th Cir. 2008) ...................................................passim

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09CV1088 BTM KSC,
2013 WL 5275618 (S.D. Cal. Sept. 17, 2013)....................................5

*In re Polyurethan Foam Antitrust Litig.*,
No. 1:10 MD 2196, 2016 WL 320182 (N.D. Ohio Jan. 27, 2016)....................30

Appellate Case: 15-3976     Page: 6     Date Filed: 03/23/2016 Entry ID: 4381032

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
No. MDL 13-02439, 2016 WL 755640 (E.D. Wis. Feb. 25, 2016) ..........30, 34, 35

*In re U.S. Bancorp. Litig.*,
291 F.3d 1035 (8th Cir. 2002)................................................................12

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
643 F. Supp. 2d 1094 (D. Minn. 2009) ............................................32

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...........................................................34

*In re Xcel Energy Inc., Sec. Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)....................................... 19, 24

*In re: Wal-Mart Wage and Hour Employment Practices Litig.*,
MDL No. 1735 Order at Docket No. 613 (D. Nev. March 8, 2010) ....................5

*Johnson v. Georgia Highway Express*,
488 F.2d 714 (5th Cir. 1974) ..........................................................19

*Johnston v. Comerica Mort. Corp.*,
83 F.3d 241 (8th Cir. 1996)................................................. 16, 17, 32

*Jones v. Amalgamated Warbasse Houses, Inc.*,
721 F.2d 881 (2d Cir. 1983) ...........................................................34

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)................................................. 14, 20

*Lees v. Anthem Ins. Cos. Inc.*,
No. 13-CV-1411, 2015 WL 3645208 (E.D. Mo. June 10, 2015).................... 14, 20

*Longden v. Sunderman*,
979 F.2d 1095 (5th Cir. 1992) .........................................................34

*Michel v. WM Healthcare Solutions, Inc.*,
2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ...................................... 22

*Nat'l Hockey League v. Metro. Hockey Club Inc.*,
427 U.S. 639 (1976)...........................................................................12

*Perkins v. General Motors Corp.*,
965 F.2d 597 (8th Cir. 1992)............................................................31

*Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc.*,
809 F.3d 1018 (8th Cir. 2016)..........................................................35

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ................................................... 12, 24

*Rose v. Bank of Am. Corp.*,
2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................................21

*Shrader v. OMC Aluminum Boat Group, Inc.*,
128 F.3d 1218 (8th Cir. 1997) .........................................................13

Appellate Case: 15-3976     Page: 7     Date Filed: 03/23/2016 Entry ID: 4381032

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...........................................................25
*Strong v. BellSouth Telecomms., Inc.,*
    137 F.3d 844 (5th Cir. 1998) ...........................................................34
*Turner v. Murphy Oil USA, In*c.,
    582 F. Supp. 2d 797 (E.D. La. 2008) ..............................................33
*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) ...........................................................36
*Wilkins v. HSBC Bank Nevada, N.A.,*
    2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ..............................20, 22

## Statutes

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ............................... i

## Rules

Fed. R. Civ. P. 1 ..................................................................... 28
Fed. R. Civ. P. 23 ............................................................... 15, 26

## Treatises

Newberg on Class Actions § 15:56 (5th ed.) ..................................... 17, 32

Appellate Case: 15-3976     Page: 8     Date Filed: 03/23/2016 Entry ID: 4381032

## STATEMENT OF THE ISSUES

**Issue 1: Whether the District Court Abused its Discretion in Awarding Attorney's Fees and Costs as a Percentage of the Common Fund.**

The long-standing law in this Circuit holds that a district court has broad discretion to choose from one of two methods to calculate fees in class action cases: the percentage of the common fund method or the lodestar method. This Circuit recognizes that the percentage of the common fund approach is most reasonable where, as here, there is no attorney fee shifting provision in the underlying claim. The district court considered both methods for this settlement and ultimately chose to award fees as a percentage of the $10 million common fund. Did the district court abuse its discretion in awarding attorney's fees and expenses as a percentage of the common fund?

- *Johnston v. Comerica Mort. Corp.*,
  83 F.3d 241 (8th Cir. 1996).
- *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*,
  130 F.3d 349 (8th Cir. 1997).
- *Shrader v. OMC Aluminum Boat Group, Inc.*,
  128 F.3d 1218 (8th Cir. 1997).

**Issue 2: Whether the District Court Abused its Discretion by Not Allocating Fees Among the Court-Appointed Leadership Committee.**

A district court may exercise its independent judgment and allow court-appointed class counsel to allocate an award of attorney's fees among themselves. The district court conducted an *in camera* review of each attorney and staff person's billing records, reviewed declarations of counsel regarding the share of work each individual performed and how much each individual charged for the work. The permitted class counsel to apportion the fee award. There is no dispute

viii

regarding the allocation of fees. Did the district court abuse its discretion in permitting court-appointed lead counsel to apportion fees where there is no disagreement among counsel?

- *In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004).
- *Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir. 1992).
- *Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996).
- *In re Copley Pharm., Inc., Albuterol Products Liab. Litig.*,
  50 F. Supp. 2d 1141 (D. Wyo. 1999) *aff'd and remanded sub nom. In re Copley Pharm., Inc.*, 232 F.3d 900 (10th Cir. 2000).

Appellate Case: 15-3976    Page: 10    Date Filed: 03/23/2016 Entry ID: 4381032

# STATEMENT OF THE CASE

This appeal arises from the final approval of a class action settlement. In early 2014, five Plaintiffs filed four separate class action complaints against Life Time alleging that Life Time violated the TCPA by sending unsolicited text message advertisements.[1] On June 18, 2014, Life Time moved the United States Judicial Panel on Multidistrict Litigation ("JPML") to consolidate the class actions for pretrial proceedings in the District of Minnesota. Counsel from all four actions filed separate memoranda in support of the consolidation and transfer. The JPML granted the motion on October 15, 2014. (App. 2a.)

Following transfer of the cases to the District of Minnesota, Plaintiffs, working in a court-appointed leadership structure, filed their consolidated class action complaint. (App. 14a.) The parties engaged in discovery concerning the claims raised by the lead Plaintiffs. Class Counsel thoroughly reviewed the relevant documents and Life Time's marketing practices. (AA. 57.) Class counsel also reviewed various agreements that Plaintiffs and the putative class members entered into with Life Time. Furthermore, Class Counsel also retained an expert technical consultant to evaluate the system used by Life Time to send the text messages at issue. (AA. 178.)

---

[1] On February 23, 2015, Plaintiff Salam filed a Notice of Voluntary Dismissal of his claims and is no longer a party to this proceeding. (App. 3a.)

1

## I. The Parties Reached a Mediated Settlement After Engaging in Informal Discovery.

The parties participated in an all-day mediation session on November 20, 2014, in San Francisco, California before the Honorable Edward A. Infante, a JAMS neutral and retired Chief Magistrate Judge of the U.S. District Court for the Northern District of California. (AA. 57.)

Following mediation, the Parties had several telephonic mediation sessions over the course of several days. (AA. 57.) The parties continued to negotiate the remaining details of the settlement, holding numerous conference calls and exchanging multiple drafts of a settlement agreement. (AA. 57.) Throughout the process, the parties engaged in extensive arm's-length negotiations regarding the matter, evaluating the strengths and weaknesses of their respective positions. (AA. 57.) After a thorough review of relevant documents, an examination of Life Time's marketing and consumer data tracking practices, and extensive negotiations, the parties reached an agreement in principle on the essential terms of the settlement agreement and memorialized that agreement in a term sheet. (AA. 34.)

Life Time agreed to pay a minimum of $10 million and a maximum of $15 million to settle the action, to include costs of settlement administration, attorney's fees and expenses. (AA. 76, § 4.01.) Each class member who submitted valid claim could select between an estimated cash award of $100 or a membership award. The membership award was either a three-month single membership at a Life Time Fitness Gold Club of the Settlement Class member's choice, or a $250 credit.

2

Depending on the volume of claims submitted, the cash award and membership award were subject to a pro-rata adjustment.[2]

## II. The Parties Had No Agreement on Attorney's Fees and Costs.

As noted by Magistrate Judge Steven E. Rau, the parties agreed on the terms of class-wide relief while "reserving the issue of attorney's fees for judicial determination." (App 295a.) As provided in the settlement agreement, Life Time agreed to pay attorney's fees and costs "in the amount awarded by the Court." (AA. 79, § 5.01.)

The district court granted preliminary approval of the settlement on March 9, 2015. (App. 31a.) Notice was disseminated to class members on April 6, 2015. (AA. 296.) Plaintiffs filed their initial motion for attorney's fees and costs on May 4, 2015. (App. 41a.) That motion sought attorney's fees and expenses of $4.1 million. (*Id.*) The parties engaged in negotiations both before and after the motion was filed. (App. 296a.) Magistrate Judge Steven E. Rau conducted two mediation sessions, but the parties were unable to reach agreement. (App. 296a.)

Life Time, which vigorously opposed Plaintiffs' motion, served interrogatories and requests to produce on Class Counsel related to legal fees. Plaintiffs responded to the discovery and objected to a number of the discovery requests. Life Time brought a motion to compel discovery responses before

---

[2] There were 29,843 valid claims submitted. The claims administrator anticipates that there will be an upward adjustment of 60% applied to all claims. (AA. 297.) The actual upward adjustment will be greater, as the claims administrator's estimate was premised on a fee and expense award of $3 million, larger than that granted by the district court. (*See id.*)

3

Magistrate Rau. The motion was granted in part and denied in part. (App. 295a.) District Court Judge Joan N. Ericksen affirmed Magistrate Rau's order over Life Time's objection. (App. 308a.) Judge Ericksen also ordered: "[a]s they agreed to do, Plaintiffs shall submit their billing records to the Court for *in camera* review." *Id*. Plaintiffs complied with Judge Ericksen's order.

### III. No Class Member Objected to the Merits of the Settlement and Only One Class Member Objected to Class Counsel's Fee and Expense Request.

Lindsay Thut, one of more than 578,000 class members, filed the sole objection to the settlement on June 5, 2015. (App. 87a.) Ms. Thut is the Objector-Appellant in this appeal. While Objector-Appellant claimed to have submitted her objection "*pro se*," in reality, her objection was prepared by Christopher Bandas, a known professional objector. (AA. 276.) Mr. Bandas only recently entered his appearance in this litigation after Plaintiffs-Appellees' counsel directed correspondence to this Court questioning whether Objector-Appellant was proceeding *pro se*, or was in fact represented. Oddly, the bulk of Objector-Appellant's objection consists of a 175-page expert report filed in an unrelated TCPA litigation. (App. 114a-293a.)

Mr. Christopher A. Bandas, has been recognized as a "serial" objector with suspect motives:

> [A]ttorney Christopher Bandas, a "professional" or "serial" objector [is] located in Corpus Christi, Texas. … Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own

Appellate Case: 15-3976    Page: 14    Date Filed: 03/23/2016 Entry ID: 4381032

personal financial gain; he has been excoriated by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted). Similarly, the United States District Court for the Southern District of California has also admonished Mr. Bandas for his conduct. *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013), *appeal dismissed* (Dec. 19, 2013) ("In light of Mr. Bandas's scheme, the Court finds that Ms. McBean's objections were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."); *In re: Wal-Mart Wage and Hour Employment Practices Litig.*, MDL No. 1735, Order at Docket No. 613 at 2–3 (D. Nev. March 8, 2010) (observing that "[o]bjectors' counsel have a documented history of filing notices of appeal from orders approving other class actions, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class."). *See also Dennings v. Clearwire Corp.*, Case No. c10-1859-JLR, Minute Entry at Docket Number 166, (W.D. Wa. Aug. 20, 2013); *Conroy v. 3M Corporation*, 2006 U.S. Dist. Lexis 96169, at *11 (N.D. Cal. Aug. 10, 2006).

Class Counsel took Objector-Appellant's deposition on June 24, 2015. (AA. 263.) Objector-Appellant readily admitted that the purpose of her objection was not to benefit the class—but to benefit her and her counsel. She testified as follows:

> Q: Now, what lawyers at the Bandas Law Firm represented you?

5

A: Chris Bandas.

Q: Anybody else?

A: Not that I'm aware of.

. . .

Q: Do you expect the class to benefit from your objection?

A: I'm not sure.

Q: Well, who do you expect to benefit from your objection?

Counsel: Objection to the extent it calls for communications between your lawyers, attorney-client communications.

A: I'm not going to answer that question.

**Q: Are you filing this objection for the benefit of anybody other than yourself?**

**A: No.**

(AA. 281 at 73:21–74:3; AA. 285 at 92:6–19) (emphasis added).

Like other cases involving Mr. Bandas, how the objector came to be involved raises serious questions. Objector-Appellant submitted her claim online and states that she submitted to the district court a "Claim Form Receipt" from the www.lifetimetcpasettlement.com website. (AA. 297, App. 94a.) Yet, Objector-Appellant acknowledged she did not visit the website and did not know if she completed the claim form. (AA. 271 at 34:16–18, AA. 276 at 54:23–55:3.) Despite certifying that the information on the claim form was "true and accurate," (App.

6

94a), Objector-Appellant did not complete the claim form. Inexplicably, the person who filled out the claim form used Objector-Appellant's father's personal email address and his work telephone number. (AA. 273 at 43:22–44:12.) Objector-Appellant's father, Jeff Thut, is an attorney who referred his daughter to Mr. Bandas for the purpose of filing this objection. (AA. 280 at 69:8–23.)

Although she contests Class Counsel's request for fees, Objector-Appellant never reviewed Class Counsel's fee petition. (AA. 271 at 35:6–8.) Indeed, Objector-Appellant testified that she did not even read her entire objection—she merely signed, without question, the documents that Mr. Bandas mailed her. (AA. 278 at 64:5–7.) In short, the objection presented to the district court was manufactured by lawyers experienced at frustrating the class action settlement process using Objector-Appellant as a disinterested straw person.

## IV. Class Counsel Requested a $3 Million Award for Attorney's Fees and Expenses.

After the claims period closed, Class Counsel filed their amended motion for attorney's fees and expenses on October 6, 2015, reducing their initial request. (App. 309a.) Life Time filed a memorandum in opposition to the amended motion. (App. 357a.) Appellant-Objector Thut, whose objection was filed June 5, 2015, filed no response to the amended motion. (App. 87a.)

In the amended motion, Class Counsel sought $3 million, representing $2,964,576.24 in fees and $35,423,76 in costs, or 30% of the guaranteed $10 million settlement fund. (App. 311a.) Like the initial motion, the amended motion was supported by declarations from each of the four law firms representing the

7

settlement class detailing the hours expended. (App. 340a-356a.) As of the time prior to final approval, Class Counsel had devoted approximately 1,305 hours to the prosecution of the action. (App. 334a.) As reflected in the declarations of Class Counsel, the hours and billing rates result in a lodestar of $687,928.75. (App. 336a–339a.)

## V. The District Court Held a Lengthy Hearing on the Fee Motion at Which the Court Reviewed the Request Under the Lodestar and Percentage-of-the-Fund Models and Awarded Fees and Expenses as 28% of the Fund.

Before ruling on Plaintiffs' motion, the district court conducted an *in camera* review of counsels' billing records, reviewed the memoranda of the parties, the fee discovery responses, and the declarations of counsel. (App. 71a, 311a, 357a, 401a). The district court conducted a hearing on the parties' joint motion for final approval of the settlement and on plaintiffs' amended motion for attorney's fees and expenses on November 17, 2015. (App. 8a.) Judge Ericksen heard extensive argument from both parties on the issue of attorney's fees. (App. 446a–479a.) Neither Objector-Appellant nor her counsel appeared for the hearing.

Following the hearing, the district court granted final approval of the settlement on December 1, 2015. (App. 493a.) The court also issued an order granting in part and denying in part plaintiffs' amended motion for attorney's fees and expenses. (App. 488a.) The court awarded fees *and expenses* of $2.8 million or 28% of the minimum value of settlement fund. The court emphasized that the settlement affords class members significant relief:

> Given the anticipated Settlement Costs and the claims by Settlement Class Members to Cash Awards and

8

Membership Awards, a pro rata adjustment that significantly increases the Cash Award and the monetary credit amount of the Membership Award will be required to make Defendant's Total Settlement Payment amount to $10,000,000.

(App. 489a.) Among the additional facts found by the court were the following:

Plaintiffs' fee and expense request is reasonable under the percentage-of-the-benefit method given that: (a) the requested award is typical of that awarded in other class actions and TCPA settlements; (b) Class Counsel obtained a substantial benefit for the class; (c) Class Counsel assumed significant risk in taking on this Action on a contingency basis; (d) this Action presented difficult legal questions; (e) Class Counsel devoted significant time and effort to this Action; and (f) there was only one objection.

(App. 490a.)

Relying upon Eighth Circuit precedent, the district court exercised its discretion to apply the percentage-of-the-benefit method, rejecting Life Time's argument that the lodestar method was applicable:

4. To determine an award of reasonable attorney's fees, a district court has the discretion to use the percentage-of-the-benefit method or the lodestar method. *See id.* at 244–46. [citing *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241 (8th Cir. 1996)]. The Court exercises its discretion to use the percentage-of-the-benefit method.

5. The Court concludes that reasonable attorney's fees and expenses of Class Counsel are appropriately awarded in the amount of $2,800,000, which is 28% of the minimum Total Settlement Payment. Substantial benefits were conferred on the class. The defenses that Defendant would have asserted in the absence of a settlement posed

9

> genuine risks to Class Counsel's pursuit of the claims.
> There has been but one objection. The award is in line
> with awards made in similar cases.

(App. 491a.)

Life Time did not appeal the court's award of attorney's fees and expenses.

Objector-Appellant filed her notice of appeal December 22, 2015. (App. 511a.)

## SUMMARY OF THE ARGUMENT

The district court's order granting, in part, Class Counsel's fee and expense reimbursement request resolved the final contested issue in this multidistrict litigation. The district court's decision should only be reversed if the Appellant-Objector establishes abuse of discretion; that is, no reasonable court could have reached the same decision. Appellant has not, and indeed cannot, meet this onerous burden. The district court's decision is well within the range of fee awards granted in similar class action settlements and it was based upon a careful review of the merits of the settlement reached in this case. None of the nearly 600,000 settlement class members, including Appellant-Objector, objected to the merits of the settlement.

The settlement agreement does not include an agreement on attorney's fees, thus Class Counsel filed a fee petition with the district court. Defendant vigorously opposed the fee petition. The district court ordered discovery related to Class Counsel's fee request, including the production of line-by-line time entries for *in camera* review. After a detailed analysis of the underlying facts, the district court considered alternative methods of calculating a fee and ultimately chose to use the percentage-of-the-fund method.

10

The district court acted within its discretion to reduce Class Counsel's requested fee and expense reimbursement of 30% of the common fund to an award of 28% of the common fund. While Defendant vigorously opposed Class Counsel's fee request at the district court level, it did not appeal the district court's fee decision. Appellant-Objector is the only person who disputes the reasonableness of the district court's decision.

## ARGUMENT AND AUTHORITIES

**I.  The District Court Did Not Abuse Its Discretion in Awarding Attorney's Fees Based Upon a Percentage of the Common Fund.**

### A. The District Court's Decision Must Be Affirmed Unless Objector-Appellant Establishes that No Reasonable Court Could Have Reached a Similar Decision.

This Court reviews a district court's award of attorney fees for abuse of discretion. *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999)). Affording the district court great deference is the "hallmark of abuse-of-discretion review." *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). Under this standard, this Court asks not whether it would have ruled as the district court did, but whether the district court abused its discretion by ruling as it did. *See Nat'l Hockey League v. Metro. Hockey Club Inc.*, 427 U.S. 639, 642 (1976). Under the abuse of discretion standard, the Court must affirm "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801,

807 (8th Cir. 2002) (emphasis in original) (quoting *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)) (internal quotations omitted).

With respect to an appeal of an award of attorney's fees, "[this Court] will tamper with a district court's award of attorney's fees only if there has been an abuse of discretion." *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 358 (8th Cir. 1997). This is because "[t]he District Court has discretion in determining the amount of the award because it has the greatest exposure to, and therefore understanding of, the proceedings before it." *Shrader v. OMC Aluminum Boat Group, Inc.*, 128 F.3d 1218, 1219 (8th Cir. 1997). Accordingly, this Court affords great deference to a district court's fee award because the district court has the greatest understanding of the proceedings, and will only reverse a fee award if no reasonable person could have reached a similar decision.

Objector-Appellant cannot meet its burden because the majority of courts addressing the proper calculation of fee awards in the TCPA class action settlement context have reached conclusion similar to the conclusion reached by the district court in this case. The district court independently reached its decision through a careful review of similar settlements in this Circuit and elsewhere by considering the strength of relief provided to the settlement class and a review of Class Counsel's fee discovery responses, which included line-by-line itemized daily time records for all professionals who sought a fee award. The district court's thoughtful and detailed analysis of the contested fee request readily satisfies the court's duty in fee awards.

12

## B. The District Court's Decision Followed the Majority of Courts Awarding a Percentage of a Common Fund in TCPA Settlements.

There is nothing distinctive or unique about TCPA cases in regards to attorney's fee awards; courts treat TCPA cases as typical consumer cases and most commonly apply the percentage-of-the-fund method to determine fee awards. *See, e.g., In re Capital One*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (awarding a percentage rather than a lodestar "consistent with the normal practice in consumer class actions."); *Lees v. Anthem Ins. Cos. Inc.*, No. 13-CV-1411, 2015 WL 3645208 (E.D. Mo. June 10, 2015) (TCPA case awarding percentage of the fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015) (applying percentage method in TCPA action); *Allen v. J.P. Morgan Chase Bank*, *N.A.*, No. 1:13-cv-08285, Doc. No. 98 at 6 (N.D. Ill. Nov. 3, 2015) (applying percentage method and noting eleven other TCPA class actions in that district approving percentage method).

Objector-Appellant claims: "in TCPA cases courts commonly use the lodestar method in determining the amount of attorney's fees to be awarded to class counsel." (App. Br. at 20–21.) This bald, inaccurate statement was not demonstrated in any sense. Objector-Appellant's purported demonstration is based on seven scattered district court decisions, half of which actually *reject* the lodestar method and apply the percentage-of-the-fund method. (*Id*. at 20 (citing *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 2015 WL 2383358, at *8 (D.N.J. May 18, 2015) (applying percentage-of-the-fund method); *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *14 (S.D. Ohio Feb. 7, 2014) (applying percentage-of-the-fund method); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d

Appellate Case: 15-3976    Page: 23    Date Filed: 03/23/2016 Entry ID: 4381032

1200, 1210 (C.D. Cal. 2014) (applying percentage-of-the-fund method).) The other half of the decisions Objector-Appellant cites are factually distinct outlier cases in which the courts were highly critical of the relief obtained through settlement. (App. Br. at 20 (citing *Bayat v. Bank of the West*, No. 13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) (rejecting percentage method because of the unique, unfavorable aspects of the settlement, including negative injunctive relief for 99% if the class); *Grant v. Capital Mgmt. Servs.*, *L.P.*, No. 10-cv-2471, 2014 WL 888665 (S.D. Cal. Mar. 5. 2014) (using lodestar method where settlement included significant injunctive relief that was difficult to quantify). *See also id.* (citing *American Art China Co. v. Firefox Printing & Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir. 2014) (reiterating that district courts are free to choose either method and court did not abuse discretion in choosing lodestar); *Bellows v. NCO Fin. Sys., Inc.*, 2009 WL 35468 (S.D. Cal. Jan. 5, 2009) (lodestar applied, requested fees granted in full).) In short, the cases cited by Objector-Appellant confirm that application of the percentage of the fund method was appropriate here. The district court acted well-within its discretion to follow other courts in applying the percentage-of-the-fund method in class action TCPA settlements.

### C. The Award of Twenty-Eight Percent of the Common Fund in Attorney's Fees and Expenses is Reasonable.

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees … that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Objector-Appellant spills much ink discussing the standards governing how the lodestar method is applied without ever answering

14

the essential question she must answer: why did the district court err in choosing the percentage method? The reason is simple. The district court did not err in choosing the percentage method and Objector-Appellant has no argument to the contrary.

In the Eighth Circuit, district courts may exercise discretion in choosing either the lodestar or percentage-of-the-fund approach to calculate attorney's fees in common-fund cases. *See Johnston v. Comerica Mort. Corp.*, 83 F.3d 241, 245–46 (8th Cir. 1996) . And, while this Circuit allows the district court to choose the method to be applied, this Court has specifically incorporated into the law of this Circuit the recommendation of the Third Circuit Task Force that the percentage method be applied in common fund cases. *Id.* In addition, this Court has recognized the deficiencies of the lodestar method in creating a disincentive for early settlement of cases. *Id.* at 245.

Here, the district court correctly determined that this is a "common fund" case, warranting application of the percentage method. (App 490a, 491a.) In common fund cases, where an attorney recovers a common fund for the benefit of a group, equitable principles permit a court to award attorney's fees from the fund created. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); (App. 491a.) ("Given Defendant's agreement to make a minimum Total Settlement Payment, the Court rejects Defendant's argument that the percentage-of-the-benefit method is inapplicable." (*citing Johnston*, 83 F.3d at 245–46)). *See also* Newberg on Class Actions § 15:56 (5th ed.) (defining common fund as including a lump sum payment of a "set amount of money" to a group of litigants). The Settlement achieves a

15

benefit with a certain, total value of $10 million and the percentage method was appropriately applied.

The percent awarded—28 percent of the fund created, including expenses—is appropriate and within the district court's discretion. The award reflects the district court's experience presiding over the litigation, which involved significant risk and resulted in an excellent result for the class. Furthermore, as the district court recognized, this percentage award is typical of awards in similar cases. (App. 491a.) Although Objector-Appellant again attempts to cleave TCPA cases from consumer cases generally, no such distinction exists in the case law. Instead, courts award percentages in the thirty-percent range on a regular basis.

### 1. The District Court Carefully Analyzed the Attorney's Fee and Expense Request Using Detailed Time Records.

Objector-Appellant mischaracterizes the district court's analysis as "superficial" by entirely ignoring what actually transpired in the district court. The district court engaged in a thorough analysis of the attorney's fee and expense reimbursement request, which Defendant Life Time forcefully contested. The Court ordered fee-related discovery. As part of the fee-related discovery, Judge Ericksen also ordered Class Counsel to submit their work-in-progress billing records for *in camera* review, which included line-by-line billing details of every entry by all timekeepers, individual name, time billed, and description of the work performed. (App. 310a.) Class Counsel also submitted, as part of its motion requesting an award of fees and expenses, declarations detailing the work performed, hours expended and billing rates. (App. 340a–356a.) Accordingly, the

16

district court arrived at the hearing on Class Counsel's fee motion fully informed by extensive data and details as to the factual support for the requested award.

The district court conducted a lengthy hearing on the attorney's fee motion that included an in-depth probing of class counsel's lodestar, potential multipliers, and analysis of similar TCPA settlements and awards. (App. 446a–487a.) The district court did not gloss over these issues as the Objector-Appellant suggests. In fact, the record tells quite a different story.

### 2. The District Court's Decision is Based Upon Diligent Consideration of the *Johnston* Factors.

The district court awarded a reasonable percentage based on several of the *Johnston* factors often considered in common fund cases in this Circuit. *In re Xcel Energy Inc., Sec. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 993 (D. Minn. 2005) (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974)). The district court has wide discretion as to which factors to apply and the relative weight to assign to each. *Id.*

Here, the district court considered several of the *Johnston* factors as supporting the percentage awarded: the substantial benefits conferred on the class, the genuine risks posed by Defendant's asserted defenses, the lack of objections to the settlement, and the fact that the award is in line with awards made in similar cases. (App. 491a.)

First, the district court correctly determined that "the requested award is typical of that awarded in other class actions and TCPA settlements." (App. at 490a.) *See also, e.g., Allen v. J.P. Morgan Chase Bank*, N.A., No. 1:13-cv-08285,

17

Doc. No. 98 at 6 (awarding 33.33% of $10.2 million settlement fund and noting eleven other TCPA class actions in that district approving a one-third fee); *Lees v. Anthem Ins. Cos. Inc.*, No. 13-CV-1411, 2015 WL 3645208 (E.D. Mo. June 10, 2015) (TCPA case awarding 34% of amount paid to class members).

Furthermore, while the Seventh Circuit has its own particular standards governing attorney fee awards in common fund cases, a line of cases from that circuit has examined the body of law governing awards in TCPA cases. The most notable of these cases is *In re Capital One*, 80 F. Supp. 3d at 803–04. In that case, the court examined empirical evidence of fee awards in TCPA cases, and created a fee schedule for such awards that determined that the base market rate is 30% of the first $10 million recovered plus an additional percentage added based on risk. *Id.* at 805-07; *see also Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 487 (N.D. Ill. 2015) (30% as reasonable base rate despite objectors' argument for lower percentage); *Wilkins v. HSBC Bank Nevada, N.A.,* 2015 WL 890566, at *10 (N.D. Ill. Feb. 27, 2015) (finding that before considering possible risk adjustments, 30% is the reasonable base market rate for the first $10 million of recovery); *Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action). The court in *In re Capital One* further noted no difference between TCPA fee awards and other types of cases. *In re Capital One*, 80 F. Supp. 3d at 800.

To support the manufactured argument that TCPA cases typically award twenty percent or less in attorney's fees from the common fund, Objector-Appellant cherry-picks the same outlier cases cited to support her lodestar

18

argument, where unique factual circumstances led to the award of a lower percentage. (App. Br. at 24–25.) Generally, these cases involve problematic settlements with less than average relief, lower claims rates and negative injunctive relief (relief that insulates defendants by granting prior express consent for the class, which allows for future texting, obviating the underlying goal of the lawsuits).

For instance, Objector-Appellant cites *Bayat v. Bank of the West*, 2015 WL 1744342, at **8–9 (N.D. Cal. Apr. 15, 2015). In that case, the court was extremely critical of the settlement relief. The court noted that the settlement provided: (1) the monetary relief obtained was less than 1% of the full potential verdict value and less than 2% of the class would receive value at all; (2) imposed negative injunctive relief on 99% of the class, who, under the settlement were deemed to have given the defendant prior express consent and could receive text messages in the future. The court concluded that the overall value of the settlement was less than the value of the monetary award because of the negative injunction. Despite the court's harsh criticism of the settlement, the court awarded a lodestar fee with a 1.5 multiplier.

Objector-Appellant also cites *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014), a settlement that had similar deficiencies. In *Rose*, claimants would receive an average recovery of $20 to $40, which, the court noted, fell in the lower range of recovery achieved in other TCPA class action settlements. In contrast, settlement class members in the instant case will receive more than $160 in cash or more than $400 in membership value, depending upon each class member's election. The *Rose* court also criticized the settlement's injunctive relief.

19

While presumably designed to protect settlement class members from receiving automated calls in the future, the injunctive relief effectively allowed the defendants to continue making automated calls to class members. There is no such injunction in the instant case. Similarly, in *Michel v. WM Healthcare Solutions, Inc.*, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014), the court awarded 15% of the common fund after criticizing the settlement benefits as unreasonably low ($50–$75 per claimant). Objector-Appellant also cites to *Wilkins,* 2015 WL 890566 at *9–10. In *Wilkins*, the court awarded attorney's fees of 23.75% of the common fund, based on the *Capital One* market rate scale, and because the case involved a large settlement—$40 million—the court adjusted the percentage down to avoid an excessive fee. Finally, Objector-Appellant cites *Arthur v. Sallie Mae, Inc.,* 2012 WL 4076119 (W.D. Wash. Sept. 17, 2012), in which the court awarded 20% of the settlement fund where the settlement was fund was extremely large ($24 million), again, in order to avoid an excessive fee.

### 3. The District Court's Award Was Reasonable in Light of the Particular Facts Presented.

As the district court recognized, class counsel achieved an excellent settlement for the class. The district court determined that the settlement confers substantial benefits, involved significant risks and involved just one objection. (App. 491a.) Although Objector-Appellant states that the relief obtained is comparable to awards in other TCPA cases, she fails to inform the Court that those cases support an award of one-third of the common fund as attorney's fees.

20

Moreover, the cases Objector-Appellant relies upon for a lower percentage award uniformly involve less than average class relief. *See supra* at I. B, C.

Furthermore, although Objector-Appellant now argues that the risk involved in this case was minimal, the district court, which was obviously in a position to assess risk, found otherwise. Indeed, Objector-Appellant contradicts her testimony that she has no understanding of the TCPA, the strengths and weaknesses of this case, or the terms of the settlement agreement. (AA. 9–10, 22–26.) While Objector-Appellant focuses on the statutory liability, she never addresses the fact that Life Time asserted bona fide defenses. Among those defenses, Life Time argued that it did not use an automatic telephone dialing system ("ADTS") to send the text messages at issue. Defendant also asserted that the recipients of the text messages had given prior express consent to receive them by providing their phone number when enrolling at a Life Time facility or signing a guest register. Either defense could have foreclosed any recovery by Plaintiffs.

While Life Time agreed to certification of the settlement class for settlement purposes, it had previously maintained that the claims asserted were unsuitable for class certification. While plaintiffs had always maintained the strength of their claims, success was far from assured.

Objector-Appellant further argues that a twenty-eight percent award is too high because class counsel did not have to do much work to secure a victory for the plaintiffs. This is false. The mere fact that this case settled before the parties engaged in full-scale formal discovery and motion practice does not detract from class counsel's significant dedication to the prosecution of this litigation and the

effort to secure a victory for the class. Class Counsel pursued this action with the care and skill commensurate with their significant experience as counsel in other complex litigation. More importantly, Class Counsel took on the risk—from the start of the case—that Defendant would win on its defenses.

### D. The District Court Considered but Rejected a Lodestar Cross-Check.

Although Appellant argues that a lodestar cross-check is required, this Circuit does not require a cross-check and specifically rejected such a mandate. *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *see also, Xcel,* 364 F.Supp.2d at 998; *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *22 (E.D. Mo. June 30, 2005). If the district court approval of the fee under the percentage of the fund method was proper, lodestar analysis is irrelevant. *Id.* And, as explained below, here the district court's percentage award is appropriate. *Id.*

More importantly, Objector-Appellant's argument that the district court failed to conduct a lodestar cross-check analysis is incorrect. Judge Ericksen considered application of the lodestar method as cross-check and corresponding multipliers at great length at the fee hearing. (App. at 448a–484a.) The district court further considered the billing rates and hours of work performed by Class Counsel. (App. at 459a.) The district court also fully examined TCPA case law on fee awards. (App. at 450a–453a.) In sum, Objector-Appellant mischaracterizes the proceedings before the district court and fails to acknowledge that the district court fully contemplated all options for calculating Class Counsel's fee request.

22

### E. The District Court Was Within Its Discretion to Not Expressly Deduct Settlement Administration Costs from the Overall Fund Before Awarding Fees.

Appellant cites a single case for the proposition that the district court erred by not deducting settlement administration costs from the overall fund before awarding attorney's fees. (App. Br. at 28 (citing *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).) This Circuit does not mandate that settlement administration costs be deducted from the attorney's fee calculation. As many courts have recognized, an effective notice is a benefit to the class and is appropriately considered part of the value of the settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class."); *9-M Corp., v. Sprint Communications Co., L.P.*, No. 11-3401, 2012 WL 5495905, at *2 (D. Minn. Nov. 12, 2012) (stating administration costs should be counted when determining the gross cash benefit provided); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1077–78 (S.D. Tex. 2012) (including notice and administration costs as part of benefit in determining fee award). Indeed, Objector-Appellant's argument goes directly against her deposition testimony, wherein she stated she has "no idea" about who "should pay the costs of sending notice" and that she has no opinion on the issue. (AA. 9.) While Objector-Appellant testified that she does not have an opinion on who should pay the costs of notice, she admitted that class notice benefits the class. (*Id.*) Accordingly, the district court did not err in treating administration costs as a part of the overall fund created.

Appellate Case: 15-3976     Page: 33     Date Filed: 03/23/2016 Entry ID: 4381032

## II. The District Court Did Not Abuse Its Discretion by Allowing Class Counsel to Allocate Attorney's Fees.

The district court did not abuse its discretion by allowing Class Counsel to allocate the fee payment among themselves. Objector-Appellant's argument fails for two reasons. First, the district court did not have a duty to scrutinize the fee allocation. Every appellate court to consider this issue, including those cited by the Objector-Appellant, has held that private allocations of attorney's fees are within the district court's discretion. District courts have a duty to ensure the reasonableness of attorney's fees in the aggregate, but do not have a duty to scrutinize the allocation of those fees unless there is a dispute among counsel. Objector-Appellant's argument must fail because it based on an overly broad interpretation of inapplicable authority that other courts have emphatically rejected. Second, even if the district court had a duty to oversee fee allocation, that issue is not properly before this Court. Objector-Appellant's objection to the district court was based upon the reasonableness of fee and expense request. Now, on appeal, she claims her objection is not only to reasonableness of the fee award, but also on Rule 23 grounds. The district court properly applied Rule 23, and Objector-Appellant has waived argument to the contrary by not raising the issue below.

### A. Objector-Appellant Has Not Established that the District Court Abused Its Discretion.

Though Objector-Appellant agrees that the abuse of discretion standard applies to the Court's review of the reasonableness of the award itself, she suggests that this Court should apply a *de novo* review to the question of whether the district

24

court erred in delegating the *allocation* of the fee award to class counsel. (App. Br. at 30.) That is the wrong standard. To avoid having to meet the high burden of proving abuse of discretion, Objector-Appellant crafts her argument as something it is not: she frames her argument as an interpretation of the Federal Rules of Civil Procedure. But the district court did not interpret Rule 23, it applied Rule 23 to arrive at a fee award. Objector-Appellant's objection relates exclusively to the reasonableness of attorney's fees, not whether the district court misapplied the rules of civil procedure. Indeed, Objector-Appellant's chief case, *In re High Sulfur Gasoline Prods. Litig.,* 517 F.3d 220 (5th Cir. 2008), describes the court's rule in a dispute regarding the allocation of fees between counsel as a role in equity, not a role arising out of Rule 23. Objector-Appellant does not cite a single case in which an appellate court has applied any standard other than abuse of discretion to reviews of attorney fees in class action settlements. The Court should therefore apply the same abuse of discretion standard as above.

## B. Objector-Appellant's Theory That District Courts Must Engage in Fee Allocation Among Cooperating Co-Counsel Has No Basis in Law.

Objector-Appellant conflates the district court's duty to scrutinize attorney's fee requests with the separate issue of allocation of the awarded fees among counsel. In doing so, Objector-Appellant misrepresents the Fifth Circuit's holding in *In re High Sulfur Gasoline Prods. Litig.* as standing for the proposition that a district court violates Fed. R. Civ. P. 23(h) when it allows counsel to agree to allocation of attorney's fees amongst themselves. This is false.

25

In *High Sulfur Gasoline*, the Fifth Circuit held that when one or more of plaintiffs' attorneys object to the recommended allocation, the district court has an equitable duty to scrutinize the allocation. 517 F.3d at 233–34. The court did not hold that a district court can never allow plaintiffs' counsel to allocate awarded fees amongst themselves. *See id.* at 234 ("It is one thing for all attorneys to come to an agreement about dividing up fees, and quite another for five attorneys to declare how an award will cover themselves and seventy-four other attorneys with no meaningful judicial supervision or review.") (internal citations omitted). Therefore*, High Sulfur* only applies when there is a fee allocation dispute among counsel. There is no dispute in this case, and therefore, the district court did not have a duty to scrutinize the allocation.

It is also clear that Objector-Appellant's broad interpretation cannot be correct because district courts in the Fifth Circuit continues to approve the practice of plaintiffs' counsel allocating fees among themselves years after the *High Sulfur Gasoline* order. *See Evans v. TIN, Inc.*, No. Civ. A. 11-2182, 2013 WL 4501061, at *16 (E.D. La. Aug. 21, 2013); *Altier v. Worley Catastrophe Response, LLC*, No. Civ. A. 11-241, 2012 WL 161824, at *19 (E.D. La. Jan. 18, 2012) (citing *High Sulfur Gasoline* to support the statement that the Fifth Circuit approves of this procedure). Similarly, the exact broad interpretation of *High Sulfur Gasoline* asserted by appellant here was recently presented to and rejected by other courts. *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, No. MDL 13-02439, 2016 WL 755640, at *11 (E.D. Wis. Feb. 25, 2016); *In re Polyurethan Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 WL 320182, at *16–17 (N.D. Ohio Jan. 27, 2016).

26

Beyond misinterpreting the holding, Objector-Appellant's reliance on *High Sulfur Gasoline* is misplaced because the case is an extreme case example and factually distinguishable from this case in several material ways. First, in *High Sulfur* attorney's fee were to be divided among thirty-two law firms and seventy-nine plaintiff attorneys. 571 F.3d at 224. Here we have four attorneys from four firms. Next, the district court in *High Sulfur* delegated exclusive authority to a five-member fee committee, made up of participating plaintiff counsel, to handle all fee allocation disputes. *Id.* That committee created a proposed allocation, and presented it to the district judge *ex parte* without notifying any other plaintiff attorneys of the proposal or communication. *Id.* Also, the allocation presented to the district court went beyond simply allocating fees but included confidentiality and release language so that counsel would not know what each other had received in the allocation. *Id.* at 224–25. To make matters worse, transcripts from the *ex parte* hearing revealed that the district court stated it was receiving documentation that was not included in the record on appeal. *Id.* at 225. The district court also sealed the exhibits documenting individual time and fee entries and placed a gag order on Plaintiff's attorneys. *Id.* at 229. None of those facts are present in the instant case, where Class Counsel has cooperated throughout the litigation.

No court has required district courts to scrutinize fee allocation among attorneys where no fee allocation dispute exists; nor should this Court. To do so, would deter cooperation among class counsel, add judicial involvement where it is not necessary, and slow the administration of justice. *See* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "shall be construed, administered, and employed

27

by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Perkins v. General Motors Corp.*, 965 F.2d 597, 600 (8th Cir. 1992). It is difficult to imagine how absent settlement class members would have a stake in the ultimate allocation of fees, as opposed to the overall fee award.

This issue bears no weight on the reasonableness of the amount of fees. The private allocation of fees among a group of lawyers representing the same clients in a common action does not relate to whether their composite fee is reasonable. Any agreement among Class Counsel does not increase or decrease the amount of fees paid by the Settlement Class. There is no dispute among Class Counsel on the allocation of fees awarded by the district court, and such agreements follow a public policy favoring private agreements in anticipation of any such disputes. Appellant-Objector's appeal of the district court's allowance for Class Counsel to allocate fees among themselves must be denied.

### C. The District Court Did Not Have a Duty to Scrutinize the Allocation of Attorney's Fees Among Counsel.

District courts, as Judge Ericksen did here, have a duty to scrutinize attorney's fee requests. *Johnston*, 83 F.3d at 246 (citing *In re General Motors Corp.*, 55 F.3d 768, 820 (3d. Cir. 1995)). This duty requires the court to ensure that attorney's fees are reasonable in the aggregate. *See In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1101 (D. Minn. 2009) (citing Fed. R. Civ. P. 23(h) advisory committee's note (2003)) ("Active judicial involvement in

Appellate Case: 15-3976     Page: 38     Date Filed: 03/23/2016 Entry ID: 4381032

*measuring* fee awards is singularly important to the proper operation of the class action process.") (emphasis added).

Once the district court awards a reasonable aggregate sum to plaintiffs' attorneys, ideally, class counsel privately agrees to the proper allocation of the fees." *See In re Copley Pharm., Inc., Albuterol Products Liab. Litig.*, 50 F. Supp. 2d 1141, 1148 (D. Wyo. 1999) *aff'd and remanded sub nom. In re Copley Pharm., Inc.*, 232 F.3d 900 (10th Cir. 2000) ("[i]deally, allocation is a private matter to be handled among class counsel"); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357 (N.D. Ga. 1993) (citing Newberg, *Attorney Fee Awards* § 2.16 (1986)). This makes sense because class counsel should be encouraged to cooperate and are "generally better able to decide the weight and merit of each other's contribution to the case." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 682174, at \*16 (D. Minn. Mar. 7, 2008) *amended in part*, No. MDL 1708 DWF/AJB, 2008 WL 3896006 (D. Minn. Aug. 21, 2008)); *Turner v. Murphy Oil USA, In*c., 582 F. Supp. 2d 797, 808 (E.D. La. 2008) (citing *In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 216, 223 (2d Cir. 1987)); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 400 (D.D.C. 1978). This is especially true because it is the public policy of this Circuit to encourage the efficient resolution of fee motions. *See In re Genetically Modified Rice Litigation*, 764 F.3d 864, 872 (8th Cir. 2014).

Since fee allocation by agreement is ideal, it logically follows that a district court may exercise its independent judgment to leave fee allocation up to the attorneys themselves. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516,

29

533 n.15 (3d Cir. 2004); *Longden v. Sunderman*, 979 F.2d 1095, 1101 (5th Cir. 1992); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996) ("How special counsel and class counsel ultimately divide that among themselves appears to be irrelevant"); *In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 216, 223 (2d Cir. 1987); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, No. MDL 13-02439, 2016 WL 755640, at *11 (E.D. Wis. Feb. 25, 2016); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 383 (S.D. Ohio 2006); Newberg on Class Actions § 15:23 (5th Ed.). However, the district court may also exercise its independent judgment to require judicial involvement or to reject fee allocation agreements presented to it. *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 849 (5th Cir. 1998) (internal quotation marks omitted); *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d Cir. 1983) *cert. denied*, 466 U.S. 944 (1984).

If the attorneys receiving a fee award cannot come to an agreement regarding fee allocation or there is an objection to the proposed allocation, then the court's duty to scrutinize the allocation is triggered. *See In re Copley Pharm., Inc., Albuterol Products Liab. Litig.*, 50 F. Supp. 2d 1141 (D. Wyo. 1999*) aff'd and remanded sub nom. In re Copley Pharm., Inc.*, 232 F.3d 900 (10th Cir. 2000) (citing *Lucero v. Trinidad*, 815 F.2d 1384, 1386 (10th Cir. 1987)); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, No. MDL 13-02439, 2016 WL 755640, at *11 (E.D. Wis. Feb. 25, 2016) ("the [*High Sulfur*] court held that when some of the plaintiffs' attorney object to a proposed allocation … the court has a duty to rule on the objection and allocate fees in a fair manner.") Because there was no fee allocation dispute among Class Counsel here, the district court did not abuse its discretion by

30

allowing counsel to determine the ultimate allocation of the awarded attorney's fees.

### D. This Issue Is Not Properly Before the Court Because Objector-Appellant Has Raised This Issue for the First Time on Appeal.

This Court should not consider the Objector-Appellant's second issue because she did not raise it to the district court. As a general rule, this Court will not consider an argument raised for the first time on appeal. *See Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc.,* 809 F.3d 1018, 1022 (8th Cir. 2016). Here, Objector-Appellant points to a citation to *High Sulfur* to suggest she raised this issue to the district court. After filing her written objection, Objector-Appellant disavowed any objection she may have had with respect to the issue of whether a district court should inject itself into the disbursement of fees among co-counsel. When questioned about *High Sulfur*, Objector-Appellant testified that she cited the case for the proposition "[t]hat the attorney's fees are unreasonable." (AA. 285.) Later in her deposition, Objector-Appellant testified that her objection was limited to the request for attorney's fees. (AA. 290.) Objector-Appellant chose not to attend the final fairness hearing or the hearing on fees, nor did she submit any further written argument to the district court regarding her position. Prior to this appeal, Objector-Appellant repudiated of any interpretation that her objection relates to the allocation of fees.

Given that Objector-Appellant repudiated any objection other than whether the district court should award any attorney's fees, Objector-Appellant cannot fairly argue on appeal that the district court abused its discretion in permitting

court-appointed class counsel to allocate fees among themselves. Even if she had not repudiated the argument, Objector-Appellant's mere mention of *High Sulfur* in her written objection is not enough to constitute an objection that was preserved for appeal because it did not state the grounds for the objection. *See Denniston v. Burlington N., Inc.*, 726 F.2d 391, 393 (8th Cir. 1984) ("Denniston's general objection at trial did not particularize either of these grounds, however, and thus the error cited on appeal was not properly preserved for review."). Indeed, "A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. … Especially not when the brief presents a passel of other arguments … . Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Here, the district court did not abuse its discretion—or fail any other review standard—because Objector-Appellant did not raise this issue at the district court level. And, even if Objector-Appellant had made this argument, for the reasons already set forth herein, it would still fail.

## CONCLUSION

Ultimately, after carefully poring over the detailed billing records and declarations submitted by Class Counsel, the district court acted well within its discretion by applying the percentage-of-the-fund method to award fees and expense reimbursement to Class Counsel as 28% of the minimum common-fund recovery. Not only was this award in line with many district courts granting attorney fees of one-third or more of the benefit available to the class, it reflects the substantial relief Class Counsel obtained for the Class. In fact, the relief secured by

Class Counsel here outpaces nearly every other TCPA settlement identified in Objector-Appellant's brief.

Moreover, because there is no dispute whatsoever among Class Counsel as to the disbursement of these fees to the four firms requesting them, the district court employed the preferred practice—both in this Circuit and elsewhere—of allowing Class Counsel to carry out the fee allocation after confirming the reasonableness of the total award in the first instance, rather than expending time and judicial resources injecting itself into a process more efficiently achieved through cooperation among counsel.

For these reasons, Plaintiffs-Appellees respectfully request that this Court affirm the district court's award of attorney fees and expenses in all respects.

\*      \*      \*

Dated: March 23, 2016

BAILLON THOME JOZWIAK & WANTA LLP

s/ Shawn J. Wanta

Shawn J. Wanta, MN No. 0389164
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571

*Plaintiffs' Lead Counsel and Class Counsel*

*Class Counsel and Plaintiffs' Executive Committee*

J. Gordon Rudd, Jr.
Zimmerman Reed PLLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400

Katrina Carroll
Lite DePalma Greenberg, LLC
211 West Wacker Drive, Suite 500
Chicago, IL 60606
(312) 750-1265

David T. Butsch
Butsch Roberts & Associates LLC
231 South Bemiston Ave
Suite 260
Clayton, MO 63105
(314) 863-5700

34

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the requirements of Fed. R. App. P. 28(h)(2) because this brief and Addendum have been scanned for viruses and are virus-free.

2. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,227 words, excluding certificates, table of contents and table of authorities.

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in Equity Text B size 14.

Dated this 23rd day of March, 2016.

s/ Shawn J. Wanta
Shawn J. Wanta
Attorney for Appellee-Plaintiffs

Appellate Case: 15-3976    Page: 45    Date Filed: 03/23/2016 Entry ID: 4381032

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Shawn J. Wanta
Shawn J. Wanta, MN No. 0389164
Attorney for Appellee-Plaintiffs

36