# In the United States Court of Appeals for the Eighth Circuit

No. 15–3976

---

IN RE: LIFE TIME FITNESS, INC., TELEPHONE CONSUMER PROTECTION ACT (TCPA) LITIGATION

---

PLAINTIFFS' LEAD COUNSEL;
PLAINTIFFS' EXECUTIVE COMMITTEE,
Plaintiffs–Appellees

LINDSEY THUT,
Objector–Appellant

v.

LIFE TIME FITNESS, INC.,
Defendant–Appellee

---

On Appeal from the U.S. District Court for the
District of Minnesota, No. 14–md–02564
(Honorable Joan N. Ericksen, U.S. District Judge)

---

REPLY BRIEF FOR APPELLANT

---

Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, TX 78401
(361) 698–5200
Counsel for Objector/Appellant

# Table of Contents

Table of Contents ................................................................................................. i

Introduction ...................................................................................................... 1

Argument ........................................................................................................... 2

I.  The District Court Abused its Discretion in Awarding Class Counsel $2.8 Million, Which Authorizes a Billing Rate of $1,938.12 Per Hour. ...................... 2

II.  Courts Commonly Employ the Lodestar Method in TCPA Cases, or at Least Perform a Lodestar Cross-Check. .......................................................... 3

III. The District Court Abused its Discretion in Failing to Supervise Allocation of $2.8 Million Among Multiple Law Firms. ............................................... 6

Conclusion ......................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Americana Art China Co.* v. *Foxfire Printing & Packaging, Inc.*, 743 F.3d 243
(7th Cir. 2014) .................................................................................................. 3

*Bayat v. Bank of the W.*, C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. 2015) .............. 4

*Couser v. Comenity Bank*, 125 F.Supp.3d 1034 (S.D. Cal. 2015) ........................................ 5

*In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987) ................................. 6

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................... 4

*In re Diet Drugs, Prods. Liab. Litig.*, 401 F.3d 143 (3d Cir. 2005) ........................................ 8

*In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220 (5th Cir. 2008) ................. 6, 7

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.,* 15-2485, 2016 WL 611441
(3d Cir. 2016) .................................................................................................... 3

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.,* 08CV3610 (CLW),
2015 WL 2383358 (D. N.J. 2015) .................................................................. 3, 4

*Matco Mach. & Tool Co. v. Cincinnati Milacron Co.*, 727 F.2d 777 (8th Cir. 1984) ............... 7

*Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031
(S.D. Ohio 2014) ............................................................................................... 4

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...................................................... 5

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................................... 5

*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998) ..................................... 6

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................... 5

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................................. 5

**Other Authorities**

*Manual for Complex Litigation* § 14.11 (4th ed. 2004) .............................................................. 6

**Rules**

FED. R. CIV. P. 23(e),(h) ............................................................................................... 2, 6-8

## Introduction

Not surprisingly, class counsel vigorously defend their right to take $2.8 million in attorneys' fees from this class action settlement. In a case on file *for less than two months*, class counsel seeks more than 28% of the total recovery, which will be taken directly from the class members.

Despite class counsels' argument to the contrary, employment of the lodestar method, or at the very least a lodestar cross-check, is essential to evaluate the fairness of the attorneys' fees award. Otherwise, this Court will sign off on **an outrageous billing rate of $1,938.12 per hour** ($2.8 million ÷ 1,444.70 hours purportedly worked = $1,938.12 per hour).[1] Class counsel have not and cannot cite any authority justifying this ridiculous hourly rate. Their claim that the district court considered the lodestar approach simply cannot be reconciled with the recovery permitted.

Instead of addressing the merits of the objections, class counsel lob *ad hominem* attacks at Ms. Thut's counsel and criticize Ms. Thut, a layperson, for not reading documents or understanding legal issues in the case. *See e.g.,* Appellees' Brief, 4-7, 21 ("Objector-Appellant contradicts her testimony that she has no understanding of the TCPA, the strengths and weaknesses of this case, or the terms of the settlement agreement"). Setting aside these improper and irrelevant attacks, it is clear that class counsels' recovery of $2.8 million, which is 3.7 times the lodestar and results in a

---

[1] App. 362a.

1

Appellate Case: 15-3976    Page: 5    Date Filed: 04/06/2016 Entry ID: 4385686

nearly $2,000 per hour billing rate, is the antithesis of a fair, reasonable, and adequate award. FED. R. CIV. P. 23(e),(h).

## ARGUMENT

### I. The District Court Abused its Discretion in Awarding Class Counsel $2.8 Million, Which Authorizes a Billing Rate of $1,938.12 Per Hour.

According to class counsel:

> Objector-Appellant spills much ink discussing the standards governing how the lodestar method is applied without ever answering the essential question she must answer: why did the district court err in choosing the percentage method? The reason is simple. The district court did not err in choosing the percentage method and Objector-Appellant has no argument to the contrary.

Appellees' Brief, at 14-15.

It is hard to understand the basis for these remarks when Appellant spent the majority of her brief answering this precise question. *See* Appellant's Brief, *passim*. The answer to why the district court erred in relying exclusively on the percentage method is that it allowed class counsel to recover a windfall at the expense of the class. *See e.g.,* Appellant's Brief, at 14, 26. The numbers allow for no other conclusion.

Class counsel do not dispute that under a lodestar analysis, they are taking home an extraordinary $1,938.12 per hour. Do they believe this to be a reasonable hourly rate for their partners, much less their associates and paralegals? Class counsel also do not deny that they seek $2.8 million for settling a case which was on file for less than

2

two months. As a matter of law, the award in this case is unfair and unreasonable to the class and must be reversed.

## II. Courts Commonly Employ the Lodestar Method in TCPA Cases, or At Least Perform a Lodestar Cross-Check.

Despite class counsels' efforts to paint a different picture, courts commonly consider application of the lodestar method in TCPA cases. Class counsel inaccurately reduce the authority in Appellant's Brief to "seven scattered district court decisions," which they maintain disregard the lodestar method. *See* Appellees' Brief, at 13.

To start with, in a case cited in Appellant's Brief, the Seventh Circuit Court of Appeals upheld the use of the lodestar method rather than a percentage recovery in a TCPA settlement. *Americana Art China Co.* v. *Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir. 2014) (affirming the district court's decision to apply the lodestar method and use a multiplier of 1.5).

The Third Circuit Court of Appeals also recognizes the importance of a lodestar analysis, as demonstrated by its recent affirmance of *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*[2] (cited in Appellant's Brief), which employed a lodestar cross-check to ensure the percentage-method recovery was reasonable in a TCPA case. 15-2485, 2016 WL 611441, at *2-3 (3d Cir. 2016).

Likewise, the Ninth Circuit, while allowing that courts have discretion in choosing the method for calculating attorneys' fees, requires that "their discretion must be

---

[2] 08CV3610 (CLW), 2015 WL 2383358, at *8 (D.N.J. 2015).

Appellate Case: 15-3976    Page: 7    Date Filed: 04/06/2016 Entry ID: 4385686

exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942-43 (9th Cir. 2011). Thus, where the percentage method in a common fund case would "yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Id.* at 942 (citations omitted).

Following this authority, the *Bayat v. Bank of the W.* district court opinion, cited in Appellant's Brief, rejected a request for 25% of the common fund in a TCPA case after comparing it with the lodestar. C-13-2376 EMC, 2015 WL 1744342, at *8 (N.D. Cal. 2015) (citing *In re Bluetooth*, 654 F.3d at 942). *Bayat* rejected a fee of $838,386, or 25% of the common fund, given that it was 276% higher than class counsel's lodestar. The rejected $838,386 in *Bayat* is dwarfed by the $2.8 million, or 36% of the common fund, requested by class counsel here. And, the disparity between the requested fees and the lodestar is even greater. Class counsels' requested attorneys' fees in this case are 369% more than their claimed lodestar of $758,163.

Meanwhile in each of the TCPA cases which class counsel argue the district court "rejected the lodestar method," the courts actually employed a lodestar cross-check to determine the reasonableness of fees awarded under the percentage method. *See e.g.*, *Landsman*, 2015 WL 2383358, at *8 (performing a lodestar cross-check in a TCPA case and upholding an award with a lodestar multiplier of 1.95); *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *14 (S.D. Ohio 2014) (reducing attorneys' fees awarded in a TCPA case under the percentage method after

4

conducting a lodestar cross-check); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (performing a lodestar cross-check in a TCPA case and noting that the range of acceptable multipliers is between 1.5 to 3 times higher than lodestar) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

Further, this Circuit did not, as class counsel maintains, "specifically reject" the notion that a lodestar cross-check should be performed. *See* Appellees' Brief, at 22. To the contrary, the Court acknowledged that "use of the 'lodestar' approach is sometimes warranted to double-check the results of the 'percentage of the fund' method[.]" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Where class counsel in *Petrovic* received 24% of the common fund, there was "no indication . . . that the award [was] overly generous." *Id*. By contrast, the 36% award here coupled with the outrageous lodestar recovery gives every indication of an overly generous award, thus necessitating use of the lodestar approach.

Ultimately, "regardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable." *Couser v. Comenity Bank*, 125 F.Supp.3d 1034, 1045 (S.D. Cal. 2015) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)). A billing rate of $1,938.12 per hour, an amount that is undisputed, is not reasonable. The approval of this outrageous rate constitutes a clear abuse of discretion that must be reversed.

### III. The District Court Abused its Discretion in Failing to Supervise Allocation of $2.8 Million Among Multiple Law Firms.

As Objector-Appellant argued below, the trial court further abused its discretion in failing to judicially supervise the allocation of the lump sum of $2.8 million to the multiple law firms serving as class counsel. App.90a; *In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220, 227–28 (5th Cir. 2008); *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). Class counsel seek to limit *High Sulfur* to cases in which the attorneys, as opposed to class members, object to the allocation of their fees. *See* Appellees' Brief, at 26. This forced reading does not comport with *High Sulfur's* observation that "the district court has an *independent duty* under Federal Rule of Civil Procedure 23 *to the class* and the public to ensure that attorneys' fees are . . . divided up fairly among plaintiffs' counsel." *High Sulfur*, 517 F.3d at 227 (emphasis added) (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *Manual for Complex Litigation* § 14.11 (4th ed. 2004) ("The court must distribute the [fee award] among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel)). The limitation which class counsel attempts to read into *High Sulfur* should not be adopted, and does not excuse the district court's failure to supervise the distribution of the $2.8 million in attorneys' fees to multiple law firms. *See Agent Orange*, 818 F.2d at 223 (rejecting "authority . . . to the extent it allows counsel to divide up the award among themselves in any manner they deem satisfactory under a private fees sharing agreement" and

Appellate Case: 15-3976     Page: 10     Date Filed: 04/06/2016 Entry ID: 4385686

noting that "[s]uch a division overlooks the district court's role as protector of class interests under FED. R. CIV. P. 23(e) and its role of assuring reasonableness in awarding of fees in equitable fund cases").

Objector-Appellant preserved error by raising the district court's failure to allocate the attorneys' fees award under *High Sulfur* in the objections. App.90a. In her fourth ground of her objection, Appellant-Objector specifically asserted that under *High Sulfur*, the district court had an "independent duty . . . to ensure that attorneys' fees are reasonable and divided up fairly among plaintiff's counsel." App.90a. As such, Objector-Appellant made the parties and the district court aware of her position, thus preserving error for review. *Matco Mach. & Tool Co. v. Cincinnati Milacron Co.*, 727 F.2d 777, 780-81 (8th Cir. 1984) (citation omitted).

In a desperate attempt to avoid reversal, class counsel suggest that Ms. Thut waived the argument with her lay testimony discussing her understanding of the legal arguments. *See* Appellees' Brief, at 31. Class counsel do not cite any authority supporting their draconian position that this would somehow constitute a waiver. There is none.

Appellant-Objector's clearly preserved this argument, and the district court's failure to ensure proper allocation of attorneys' fees among multiple firms is an abuse of discretion requiring reversal. *High Sulfur*, 517 F.3d at 234-35 ("our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts. . . . How much

7

deference is due the fox who recommends how to divvy up the chickens?") (quoting *In re Diet Drugs, Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring)).

## CONCLUSION

This Court should hold that the district court's award of $2.8 million in attorneys' fees, amounting to a billing rate of nearly $2,000 per hour, in this simple and straightforward case, which settled almost at its very beginning, constituted an abuse of discretion, necessitating a remand for the award of a far more modest and reasonable fee. The district court's refusal to supervise the allocation of that attorneys' fee award amongst the four law firms serving as class counsel violated Federal Rule of Civil Procedure 23(h) and likewise requires the award of attorneys' fees be vacated and remanded.

Appellant thus finds nothing in Appellees' Brief that diminishes her right to relief, and reiterates her request for relief in Appellant's Brief with even greater confidence.

Dated: April 6, 2016

Respectfully submitted,

/s/ *Christopher A. Bandas*
Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, TX 78401
(361) 698–5200

Counsel for Objector/Appellant
Lindsey Thut

## CERTIFICATION OF COMPLIANCE WITH PAGE LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type–volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,614 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14–point Garamond font.

Dated: April 6, 2016             /s/ *Christopher A. Bandas*
                                 Christopher A. Bandas

## ANTI–VIRUS CERTIFICATION

In accordance with Eighth Circuit Local Rule 28A(h)(2), I hereby certify that the Reply Brief for Appellant has been scanned for viruses and is virus–free.

Dated: April 6, 2016

/s/ *Christopher A. Bandas*
Christopher A. Bandas

# CERTIFICATE OF SERVICE

I hereby certify that all counsel listed immediately below on this Certificate of Service are Filing Users of the Eighth Circuit's CM/ECF system, and this document is being served electronically on them by the Notice of Docket Activity:

David T. Butsch
Katrina Carroll
Erin L. Hoffman
John Gordon Rudd, Jr.
Aaron D. Van Oort
Shawn J. Wanta

Dated: April 6, 2016             /s/ *Christopher A. Bandas*
                                 Christopher A. Bandas